UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-240-RJC

| JAMES MARION MASSEY, | ) |
|---|---|
| Petitioner, | ) |
| v. | ) |
| REUBEN YOUNG, Sec. N.C. Dep't. of Public Safety, | ) |
| Respondent. | ) |

**ORDER**

**THIS MATTER** is before the Court on consideration of Respondent's Motion for Summary Judgment on the petition for habeas corpus filed by Petitioner, through counsel, pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the Court finds that Respondent's Motion for Summary Judgment should be granted.

**I.      BACKGROUND**

Petitioner is a prisoner of the State of North Carolina. After a jury trial, Petitioner was convicted on three counts of robbery with a dangerous weapon and one count of carrying a concealed weapon. On November 3, 2008, Petitioner was sentenced in Mecklenburg County Superior Court to three consecutive terms of 76-101 months' imprisonment on the convictions for robbery with a dangerous weapon.[1] (Doc. No. 1-2 at 43-48). Petitioner noted an appeal to the North Carolina Court of Appeals and argued that the trial court erred in failing to dismiss the armed robbery charges and the court plainly erred in allowing two of the three robbery victims to testify regarding their out-of-court identifications of Petitioner. The court of appeals summarized the evidence presented at Petitioner's trial as follows:

---

[1] The conviction for carrying a concealed weapon was consolidated with one of the convictions for robbery with a dangerous weapon. (Doc. No. 1-2 at 47).

1

At about 2:30 p.m. on 14 June 2007, defendant entered the office of the apartment complex where Mildred Cruz, Melanie Hinson, and Eva Judith Santiago worked. Defendant complained that he had lost money in a washing machine. When the women asked what apartment he lived in, defendant pointed a gun at them and demanded their money and other belongings. Defendant took money, credit cards, jewelry, and a cell phone from the women, as well as an office DVD player. Defendant told the women to lie down on the floor and count to seventy, and then left. Defendant did not have anything covering his face during the robbery.

After defendant left, Ms. Cruz called the apartment's corporate office to report the robbery, and the corporate office contacted police. Ms. Cruz described defendant to the corporate office as a tall, thin black man wearing a do rag, a black shirt, long pants, and dark tennis shoes. The corporate office relayed Ms. Cruz's description to police. Police arrived at the apartment complex around 2:43 p.m.

A short time later, officers stopped defendant in a nearby apartment complex because he matched Ms. Cruz's description. Defendant was also wearing a camouflage jacket over his black shirt. When officers ordered defendant to stop, he initially ignored them. After officers repeatedly told defendant to stop, he put his hands on his head and allowed officers to search him. Officers found a gun secured in defendant's waistband. Although officers had not yet told defendant why they had detained him, defendant told them that he had nothing to do with the robbery.

Officers took defendant into custody at about 3:00 p.m. A groundskeeper told the victims that police caught the robber. Within ten minutes, officers began to drive the victims, one at a time, in a police car to identify defendant as the robber. Ms. Santiago, the first victim officers brought to defendant, was not able to identify him. Ms. Cruz, however, identified defendant as the robber. Ms. Cruz testified that officers held defendant as she identified him, but she could not remember if he was in handcuffs. Ms. Cruz was sure of her identification. Ms. Hinson also separately identified defendant as the robber through the same procedure and was certain of the identification. Defendant did not object to the testimony about the identification procedure, and all three victims also identified defendant in court.

Defendant testified that he was at his mother's home on 14 June 2007 between 1:00 a.m. and about 3:00 p.m., when he left for work. Defendant's mother and brother also testified that defendant

was home during that day until he left for work at 3:25 p.m.

State v. Massey, COA09-294, 2009 N.C. App. LEXIS 1864 (N.C. Ct. App. Nov. 17, 2009) (unpublished).

The court of appeals rejected each of Petitioner's arguments and affirmed his convictions, and on January 28, 2010, the Supreme Court of North Carolina denied Petitioner's petition for discretionary review. State v. Massey, 363 N.C. 808, 692 S.E.2d 390 (N.C. 2010).

Next, Petitioner filed a motion for appropriate relief ("MAR"). Petitioner argued that his trial counsel was ineffective (1) in failing to file a pretrial motion to suppress the out-of-court identifications of Petitioner by the robbery victims, and (2) in failing to properly investigate and offer testimony at trial from a material witness.[2] (Doc. No. 1-2). On May 20, 2011, the trial court summarily denied this former claim concluding that Petitioner "was not entitled to a hearing on defense counsel's failure to file a motion to suppress the witnesses' identification of defendant." (Doc. No. 1-3). On May 7, 2012, the North Carolina Court of Appeals denied his petition for discretionary review. (Doc. No. 14-3). This federal habeas proceeding follows.

## II.     STANDARD OF REVIEW

### A.     Section 2254 Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the scope of review "in cases on collateral review from a state court proceeding that adjudicated a claim on the merits is both deferential and highly constrained." Golphin v. Branker, 519 F.3d 168, 178 (4th Cir. 2008). The AEDPA provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

---

[2] The trial court granted an evidentiary hearing on Petitioner's claim that his trial counsel was ineffective in failing to call Petitioner's girlfriend to testify in his defense. Following the hearing, the trial court entered an order denying this claim. (Doc. No. 1-4: Order, filed January 12, 2012).

3

> respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

In cases alleging ineffective assistance of counsel, the Supreme Court finds that even without Section 2254's deferential review, the standard in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), "is a most deferential one." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 788 (2011). Further, "[w]hen combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable probability that counsel satisfied <u>Strickland's</u> deferential standard.'" <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 910-11 (11th Cir. 2011) (quoting <u>Harrington</u>, 131 S. Ct. at 788). Clearly, "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." <u>Id.</u> at 911.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." <u>Strickland</u>, <u>supra</u>, at 687-88. Further, Petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

    B.    Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III. DISCUSSION

    A.    First claim for relief

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated based on his attorney's failure to file pretrial challenges to the out-of-court identifications made by the robbery victims, and the identifications provided through in-court testimony by the robbery victims. (Doc. No. 1 at 9). Petitioner raised this issue in his MAR and the court concluded that Petitioner was not entitled to an evidentiary hearing on this issue. This lone issue was presented by Petitioner in his petition for a writ of certiorari and the petition was

5

denied by the North Carolina Court of Appeals. (Doc. No. 1-5: Petition for a Writ of Certiorari at 1; Doc. No. 10-1 at 4 ¶ 12).

As noted herein, the "standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 131 S.Ct. at 788 (citations omitted). "The Strickland standard is a general one, so the range of reasonable applications is substantial." Id. (citing Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were unreasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, supra.

Here, the Court finds that it was not unreasonable for trial counsel to forego a pretrial challenge to the identifications of the robbery victims in this case: whether a challenge to the evidence regarding their pretrial identifications or their testimony which provided in-court identifications in the presence of the jury. The North Carolina Court of Appeals, on direct review, provided a succinct description of the evidence as it pertains to this issue:

> Within ten minutes [of the robbery], officers began to drive the victims, one at a time, in a police car to identify defendant as the robber. Ms. Santiago, the first victim officers brought to defendant, was not able to identify him. Ms. Cruz, however, identified defendant as the robber. Ms. Cruz testified that officers held defendant as she identified him, but she could not remember if he was in handcuffs. Ms. Cruz was sure of her identification. Ms. Hinson also separately identified defendant as the robber through the same procedure and was certain of the identification. Defendant did not object to the testimony about the identification procedure, and all three victims also identified defendant in court.

Massey, 2009 N.C. App. LEXIS 1864, at *3.

Because Petitioner's counsel did not object to the identification procedures at trial, the court of appeals reviewed a challenge to the identifications for plain error. In rejecting Petitioner's argument on appeal, the court held the following:

> Plain error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotations and citations omitted). Under plain error analysis, a defendant is entitled to reversal "only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).
>
> Identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violate a defendant's right to due process. *State v. Harris*, 308 N.C. 159, 301 S.E.2d 91 (1983). The test is "whether the totality of circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Leggett*, 305 N.C. 213, 220, 287 S.E.2d 832, 837 (1982).
>
> Our courts, however, have held that:
>
>> [E]ven if the pretrial procedure is suggestive, that suggestiveness rises to an impermissible level only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

> *State v. Grimes*, 309 N.C. 606, 609-10, 308 S.E.2d 293, 294-95 (1983).
>
> Applying those factors to the facts of this case, the trial court did not commit plain error when it permitted the State to introduce the testimony describing the two victims' out-of-court identifications of defendant. The robbery happened during the middle of the afternoon, defendant's face was not obscured, and Ms. Hinson and Ms. Cruz both identified defendant within a short time after the robbery. Ms. Cruz's description closely matched defendant. Two of the victims expressed certainty regarding their identifications of defendant after the robbery. Accordingly, we conclude that this case does not present a "very substantial likelihood of irreparable misidentification," and that the trial court did not commit plain error in allowing the State to present testimony regarding two of the victims' identifications. We find no error.

Massey, supra, at *6-8.

Petitioner's argument must fail under the deferential Strickland standard because he cannot demonstrate deficient representation and he cannot demonstrate prejudice.

First, there is no dispute that the robbery occurred around 2:30 p.m. and there were three victims of the robbery. Each victim had an opportunity to observe Petitioner's face and two of them—within forty minutes of the robbery and ten minutes after Petitioner was arrested—were able to identify the Petitioner as the perpetrator. And at trial, each of the victims was able to positively identify Petitioner as the robber. "Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard . . ." Petitioner simply cannot prevail. Knowles, supra. The state court, in ruling on the MAR, and in denying the petition for a writ of certiorari, squarely rejected Petitioner's present argument.

The question that must be resolved on habeas review, then, "'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" Knowles,

8

supra (quoting Shiro v. Landrigan, 550 U.S. 465, 473 (2007)). The evidence presented by the victims in this case was gathered contemporaneously with Petitioner's capture, and in close proximity to the robbery. The daylight hour and the opportunity for the victims to observe Petitioner's uncovered face, together with Petitioner's spontaneous declaration that he had nothing to do with the robbery—a statement made some thirteen minutes after the robbery and before police officers informed Petitioner why they had detained him—caution against a finding of prejudice under Strickland. See Massey, supra, at *2-3 ("Although officers had not yet told defendant why they had detained him, defendant told them that he had nothing to do with the robbery.").

In sum, when considering the weight of the evidence against Petitioner, even if trial counsel had filed a pretrial motion challenging the eyewitness testimony, it appears very likely that the trial court would have denied the challenge. And even had such a challenge been made, the appellate court may well have reached the same determination that there was no error. The Court finds no error, and this argument will be denied.

    B.    <u>Second claim for relief</u>

Here, Petitioner argues that the state court's adjudication of Petitioner's MAR violated the provisions of § 2254(d)(1) because it was contrary to or involved a reasonable application of federal law. This argument largely depends on a finding that the MAR court's summary denial of his claim of ineffective assistance of counsel (for failure to file pretrial challenges to the eyewitness testimony): that is, testimony involving statements made by the witnesses before trial and their in-court identifications, presents no facts to which this Court must defer when evaluating the state court's ruling. (Doc. No. 1 at 19-21).

There is no question that this issue was squarely before the MAR court and that Petitioner obtained no relief in that proceeding. Further, there is no question that this issue—the only issue presented to the North Carolina Court of Appeals in the petition for a writ of certiorari—was denied along with the writ. See, e.g., Harrington, 131 S. Ct., at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (citation omitted); Johnson v. Williams, 133 S.Ct. 1088, 1091 (2013) (applying Harrington and explaining, subject to limited rebuttal, there is a presumption that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . ."). Of course, in this case the only claim presented to the court of appeals was rejected leaving only one conclusion: the court found that Petitioner was not denied ineffective assistance of counsel. See (Doc. No. 1-5: Petition for Writ of Certiorari at 1). As found herein, the Court finds that this determination does not support Petitioner's claim for habeas relief.

For the foregoing reasons, the petition for a writ of habeas corpus will be denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**. (Doc. No. 13).

2. The petition for habeas corpus filed by Petitioner pursuant to Section 2254 is **DENIED** and **DISMISSED**. [Doc. 1].

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322,

336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: September 30, 2013

Robert J. Conrad, Jr.
United States District Judge